UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP A. MACHORRO,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. EDCV 14-659 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

    Plaintiff Phillip A. Machorro filed this action on April 8, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 8, 9.) On December 31, 2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

    Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

## PROCEDURAL BACKGROUND

On September 22, 2010, Machorro filed an application for supplemental security income benefits. Administrative Record ("AR") 120-23. The alleged onset date was June 1, 2010. AR 16. The application was denied initially and on reconsideration. AR 16, 50-51. Machorro requested a hearing before an Administrative Law Judge ("ALJ"). AR 64-65. On April 16, 2012, the ALJ conducted a hearing at which Machorro and a vocational expert testified. AR 26-46. On May 17, 2012, the ALJ issued a decision denying benefits. AR 13-22. On February 11, 2014, the Appeals Council denied the request for review. AR 1-5. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Machorro has the severe impairments of gout, arthritis, hypertension, diabetes mellitus, obesity, bilateral knee effusion and impairment of his feet causing pain. AR 18. He has the residual functional capacity ("RFC") to perform light work, except he can lift, carry, push or pull 10 pounds frequently and 20 pounds occasionally; stand/walk for two hours in an eight hour workday; sit for six hours in an eight hour workday; climb, stoop, kneel, crouch and crawl occasionally; and handle and finger frequently. AR 18-19. He is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that he can perform such as small parts assembler, seem presser and final assembler. AR 21-22.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

## C. Credibility

Machorro contends the ALJ failed to articulate legally sufficient reasons for rejecting his subjective pain testimony.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13) (quotation marks omitted).[2] The ALJ may consider: (a) inconsistencies or

---

[2] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882

4

discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Machorro testified that he can stand for about 20 minutes and can sit "a lot."  AR 19, 34.  He can lift three or four pounds.  AR 19, 34.  He cannot work because of stiff, tingly hands, painful feet, swollen knees, and painful legs.  AR 19, 34-36.

The ALJ found that Machorro's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC.  AR 19.  The ALJ relied on two reasons:  (1) Machorro's activities of daily living were not consistent with the alleged degree of impairment; and (2) the objective evidence did not support Machorro's subjective complaints.  AR 19.

1. Objective Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The ALJ found that the objective evidence in the record did not support the degree of limitations asserted by Machorro.  The ALJ provided a thorough review of the medical evidence.  AR 19-21.

As the ALJ noted, the record contains no work restrictions from any treating source.  AR 20.  Shortly before the alleged onset date, Machorro was hospitalized from May 24 to May 30, 2010 for complaints of refractory nausea, vomiting, blurred vision, episodes of chest pressure and some swelling of his legs

---

F.2d 1453, 1457 (9th Cir. 1989).

5

off and on. AR 19, 194.  His labs were consistent with diabetic ketoacidosis and he was stabilized with medication.  AR 19, 192, 201.  He had no acute cardiopulmonary disease, no deep venous thrombosis in the right lower extremity, and his hypertension was at goal and mild.  AR 19-20, 188-89, 199.  He was diagnosed with new onset diabetes mellitus, likely type II, in the setting of morbid obesity.  AR 20, 202-04.  At discharge, he was able to ambulate with some mild difficulty and perform all of his usual daily tasks.  AR 20, 204.  His sugars were well-controlled.  AR 20, 204-05.  He was discharged with medications.  AR 20, 205.

On June 30, 2010, Machorro had an initial consult with John Primak, PA.  AR 218.  His physical examination was normal.  AR 218-19.  He was assessed with uncontrolled diabetes mellitus type II, unspecified essential hypertension, knee pain, left ankle pain, weakness and adult BMI >=40 kg/sq M.  AR 219.

On July 16, 2010, Machorro complained of left foot pain.  AR 216.  He was treated with medication and given a low purine diet.  AR 216-17.

On August 18, 2010, Machorro complained of arthritis, chronic pain in hands and feet, and morning hand stiffness.  AR 20, 214.  His musculoskeletal examination exhibited edema and tenderness with tender, swollen PIP joints.  AR 214.  Range of motion of the hands and feet was limited secondary to pain.  *Id.*  Although Machorro reported being unable to work or attend school, his treatment provider did not provide any work restrictions.  AR 20, 214-15.

In September and October 2010, Machorro reported no tingling or numbness of the limbs and no lesions on the feet.  AR 20, 283, 324.  He had generally normal physical examinations, and was instructed to diet and exercise to address his high blood sugar, obesity and gout.  AR 20, 284-85, 325-26.  In November 2010, Machorro went to the emergency department for a medication refill and reported no medical complaints or acute issues.  AR 20, 558-59.  In February 2011, Machorro complained of right knee pain and ambulated with

crutches. AR 339. He was treated with medication and referred for an MRI of the right knee. *Id.*

In March 2011, x-rays of the bilateral hands showed no evidence of acute right or left hand injury. AR 521. In May 2011, imaging of the right knee demonstrated joint effusion with no clear fracture. AR 20, 585. Imaging of the left knee demonstrated joint effusion with possible cortical abnormality in the proximal tibia seen on AP view only. AR 20, 586. A July 2011 x-ray of the lumbar spine indicated lower lumbar degenerative disk disease and mild facet arthropathy without acute fracture. AR 366. A December 2011 ultrasound indicated fatty infiltration of the liver. AR 20, 571.

The ALJ noted the April 2011 findings of the orthopedic consultative examiner, Dr. Yu. AR 20. Dr. Yu found that Machorro had a reciprocal gait pattern with normal heel and toe walking, and was able to squat. AR 20, 349. Range of motion of the neck, shoulders, elbows, wrists, hips, ankles, hands and fingers were within normal limits. AR 20, 349-50. Grip strength was 60 pounds on the right and 35 pounds on the left. AR 20, 350. He is right-hand dominant. AR 20, 350. He had moderate lumbosacral tenderness. AR 20, 349. Straight leg raising was negative. AR 20, 350. Machorro reported anterior knee pain, but had full range of motion of his knees with no joint line tenderness, no effusion, and no instability. AR 20, 350. Examination of his feet revealed pes planus with mid foot pain. AR 20, 350. Motor strength was 5/5 throughout the upper and lower extremities with no atrophy, and sensation was intact to light touch. AR 20, 350. X-rays of the lumbosacral spine revealed spondylosis, multilevel, disc spaces, well maintained with the exception of the L5-S1 level that noted some mild narrowing. AR 20, 351. Alignment was normal. AR 20, 351. His right knee x-ray revealed well maintained joint spaces with some mild superior and inferior spurring of the patella. AR 20, 351. Dr. Yu's clinical impression was pes planus, bilateral; myofascial back pain, underlying mild spondylosis; and morbid obesity.

AR 20, 351. He opined that Machorro could walk without an assistive device, could sit for six hours, stand and walk for two hours, occasionally lift 20 pounds and frequently lift 10 pounds, and occasionally squat, stoop, kneel, crawl, climb, bend, and lift. AR 20, 351. The State Agency doctors found that Machorro could perform a range of light work. AR 21, 330-36, 352-54.

In records submitted to and considered by the Appeals Council, a May 23, 2012 MRI of the right knee indicated moderate degenerative changes with mild lateral subluxation of the patella, complex tear in the anterior horn of the lateral meniscus and mild effusion.[3] AR 593. An MRI of the left knee indicated a lateral meniscal tear and a posterior medial meniscal myxoid degeneration without surfacing tear. AR 594. A July 2012 x-ray of the left tibia and fibula indicated stable cortical thickening and probable intramedullary lucent change of the proximal tibia. AR 598. He was treated with physical therapy. AR 618-19.

Machorro argues that his testimony is consistent with the objective evidence, the x-rays were not benign and the record shows chronic elevated uric acid as well as peripheral edema, swelling and arthralgia. AR 194, 199, 204, 214, 228, 239, 259, 264, 278-79, 385-86, 389, 435, 566. He argues that fatigue is noted (AR 194, 217, 239, 249, 264, 624, 633) and gait issues are sometimes noted in the record. AR 339, 384, 432.

Nevertheless, the ALJ's finding as to the objective medical record as a whole is supported by substantial evidence. It appears that Machorro's condition, and in particular his knees, worsened after the date of the ALJ's decision. AR 593-94, 598. In September 2012, Machorro was prescribed four

---

[3] Given that the Appeals Council considered the newly submitted evidence in the context of denying review, the court also considers it. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence").

weeks of physical therapy, but the medical records end and the result is unknown. To the extent Machorro argues that the new evidence supports disability after the date of the ALJ's decision, Machorro's recourse is to file a new application for benefits.

### 2. Activities of Daily Living

An ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell*, 947 F.2d at 346. The ALJ noted that Machorro could care for his personal needs, do some of his laundry, walk to the grocery store once a month, and shop for groceries. AR 19, 33-34. Machorro argues that he does not clean or do the dishes and, when he shops, his kids carry the groceries. When evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

The ALJ's credibility finding is supported by substantial evidence. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999)).[4]

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

---

[4] To the extent Machorro argues that the ALJ erred by "ignor[ing] [his] obesity in evaluating his testimony," his contention fails. JS 13. The ALJ found obesity to be a severe impairment. AR 18. He thoroughly discussed the objective evidence relating to Machorro's obesity. AR 19-21. The record does not show that Machorro could not work because of functional limitations due to obesity. *See Burch*, 400 F.3d at 683-84 (when there is no evidence obesity actually limited ability to work, ALJ's failure to consider alleged limitations is not reversible error).

9

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: February 25, 2015

_____
ALICIA G. ROSENBERG
United States Magistrate Judge